**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| **LODESTAR ENERGY LLC, LSE HOLDINGS FUND 1 2017 LLC, for itself and derivatively on behalf of STRATA LSE MASTER HOLDCO 1, LLC**<br><br>Plaintiffs,<br><br>vs.<br><br>**STRATA SOLAR LLC, STRATA FUND MASS 1 LLC, and STRATA MANAGER LLC,**<br><br>Defendants,<br><br>-and-<br><br>**STRATA LSE MASTER HOLDCO 1 LLC,**<br><br>Nominal Defendant. | Civil Action No.:<br><br><br><br>**VERIFIED COMPLAINT<br>AND DEMAND FOR JURY TRIAL** |

Plaintiffs Lodestar Energy LLC and LSE Holdings Fund 1 2017 LLC, for itself and derivatively on behalf of Strata Master Holdco 1 LLC, (collectively, "Plaintiffs" or "Lodestar") bring this action against Defendants Strata Solar LLC, Strata Fund Mass 1 LLC, and Strata Manager LLC (collectively, "Defendants") for breach of contract, breach of fiduciary duty, breach of the covenant of good faith and fair dealing, fraud, fraud in the inducement, fraudulent concealment, aiding and abetting breach of fiduciary duty, and unfair and deceptive trade practices.

240547

## INTRODUCTION

1.      In 2016, Lodestar Energy LLC, a solar energy company that develops, permits, constructs, and operates commercial solar energy systems, developed plans to construct six solar energy facilities in Massachusetts.  It identified six suitable locations, negotiated and signed leases with the property owners, completed the preliminary design of the systems, secured all necessary permits and regulatory approvals, and negotiated interconnection agreements with National Grid that would allow the renewable energy to be distributed to customers through the power grid.

2.      Lodestar sought to partner with another company that had expertise building and financing large solar energy systems.  As a result, it met with Strata Solar, LLC ("Strata Solar"), a North Carolina company.  Lodestar presented Strata Solar with detailed plans and specifications for the six projects, all of which had received all zoning approvals and were ready for final construction design and construction-related permits (i.e., building and electrical permits).  Strata Solar's responsibilities would be to complete construction design, obtain construction-related permits, assist in converting tax credits for the projects into capital, and building the projects according to the specifications.  Strata Solar claimed that it had abundant experience constructing such projects and using tax credits to finance them.  The parties agreed they would form a partnership to complete the projects.

3.      But Strata Solar's representations about its expertise and intentions were false.  Instead of completing these shovel-ready projects as agreed, Strata Solar took advantage of its relationship with Lodestar.  It hired temporary, day laborers for the construction work, rather than using contractors and electricians with expertise and experience.  And it failed to construct the projects in accordance with the specifications, causing the projects to sit dormant

240547

for months while the correct parts were ordered and installed.  All of this caused extensive delays, such that every project was finished nearly a year late, causing millions of dollars in direct damages to Lodestar.

4.      Meanwhile, Strata Solar used its wholly owned subsidiaries to profit at Lodestar's expense: When Lodestar refused to authorize approximately $1 million in change orders and other costs that Strata Solar sought reimbursement for that were the direct result of Stata Solar's breaches and misconduct, Strata Solar and its wholly owned subsidiaries nonetheless caused the payments to be made, hiding them in the audited financial statements as "costs of goods."

5.      When Lodestar became aware of Strata Solar's breaches and misconduct, it demanded that the LLC established by the parties to carry out the projects pursue claims against Strata Solar.  But because Strata Solar's subsidiaries controlled the LLC, the LLC refused.

6.      Defendants' breaches of contract, breaches of fiduciary duty, breaches of the covenant of good faith and fair dealing, fraud, fraud in the inducement, fraudulent concealment, aiding and abetting breaches of fiduciary duty, and unfair and deceptive trade practices have caused losses of more than $3.5 million.

## PARTIES

7.      Plaintiff Lodestar Energy, LLC ("Lodestar Energy") is a Connecticut limited liability company with a principal place of business at 40 Tower Lane, Suite 201, Avon, Connecticut, 06001.

240547

8.     LSE Holdings Fund 1 2017 LLC is a Massachusetts limited liability company with a principal place of business at 40 Tower Lane, Suite 201, Avon, Connecticut 06001 ("LSE Holdings" or, together with Lodestar Energy, "Lodestar").

9.     Plaintiff and Nominal Defendant Strata LSE Master Holdco 1, LLC (the "Company") is a Delaware limited liability company with a principal place of business at 800 Taylor Street, Suite 200, Durham, North Carolina 27701.

10.     Defendant Strata Solar, LLC ("Strata Solar") is a North Carolina limited liability company with a principal place of business at 800 Taylor Street, Suite 200, Durham, North Carolina 27701.

11.     Defendant Strata Fund Mass 1, LLC is a North Carolina limited liability company with a principal place of business at 800 Taylor Street, Suite 200, Durham, North Carolina 27701 ("Strata Fund").

12.     Defendant Strata Manager, LLC is a North Carolina limited liability company ("Strata Manager") with a principal place of business at 800 Taylor Street, Suite 200, Durham, North Carolina 27701.

## JURISDICTION AND VENUE

13.     This Court has diversity jurisdiction over this controversy pursuant to 28 U.S.C. § 1332 as the amount in controversy exceeds $75,000.00 and the parties are completely diverse in citizenship.

14.     Venue is proper in this Court because a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action, is situated in this district.

240547

## BACKGROUND

15.     Lodestar is a developer and operator of solar energy projects.  This action concerns six such projects, all located in the Commonwealth of Massachusetts.

16.     For each of the six projects, Lodestar formed a wholly owned subsidiary to carry out the development of the system that would then be used to generate electricity for sale to various end users.  Each subsidiary was deemed a "Project Company," as follows:

   a.  Bradford Solar, LLC would develop and operate an approximately 6.00-megawatt facility at 265 Presidential Drive, Haverhill, Massachusetts, 01830 (the "Bradford" project).

   b.  LSE Corona Austrina LLC would develop an approximately 2.95-megawatt facility at 92 State Line Road, West Stockbridge, Massachusetts 01230 (the "Truckstop" project).

   c.  LSE Crater LLC would develop an approximately 1.479-megawatt facility at 3 Nolan Drive, Great Barrington, Massachusetts 01230 (the "Nolan Drive" project).

   d.  LSE Apus LLC would develop an approximately 0.73-megawatt facility at 154 Center Depot Road, Charlton, Massachusetts 01507 (the "KMARD" project).

   e.  LSE Caelum LLC would develop an approximately 0.70-megawatt facility at 0 Brookfield Road, Charlton, Massachusetts 01507 (the "Mitchell" project); and

   f.  LSE Camelopardalis LLC would develop an approximately 0.73-megawatt facility at 111 Brookfield Road, Charlton, Massachusetts 01507 (the "Bus Lot" project, and, collectively with a through f, the "Projects").

17.     Lodestar sought to partner with Strata Solar, a North Carolina LLC with experience in constructing solar energy facilities and leveraging incentive tax credits to obtain funding from financial institutions.

240547

18.     On or about May 25, 2016, Lodestar met with Strata Solar employees including CEO Markus Wilhelm, CFO David Scoglio and COO Michael Belikoff in North Carolina to discuss Strata Solar's experience and terms for the tax equity and construction of the Projects.

19.     During this meeting, Strata Solar represented to Lodestar that it had significant experience constructing state-of-the-art solar energy systems.  Strata Solar represented that its solar-specific construction experience rendered it capable of working with the plans and specifications that each Project Company had developed with National Grid, such that power from each Project could be distributed to the electrical distribution grid operated by National Grid and in turn sold to various end users.  Strata Solar represented that it had expertise in complying with the regulatory and financial restrictions of such projects, and that it would be able to perform the work in the time specified and for the budgeted amounts.

20.     Strata Solar knew in May 2016 that Lodestar would rely on these representations in order to enter into an agreement with Strata Solar and its subsidiaries for the development and construction of the Projects.

21.     Strata Solar knew in May 2016 that Lodestar would rely on Strata Solar's representations regarding its ability and expertise to complete the Projects within the time allotted and that, based on this reliance, Lodestar would enter into agreements to provide electricity to the various end users based upon this schedule.

22.     In May 2016, Lodestar had signed leases for the land on which each of the six solar systems would be installed, it had procured all necessary zoning permits, it had engaged in extensive discussions with National Grid about the size and specifications of the Projects, it had signed interconnection agreements with National Grid, and it had developed detailed plans for the systems.

240547

23.     On or about June 15, 2016, Lodestar and Strata Solar signed a term sheet to develop, construct, and obtain tax equity financing for the Projects.

24.     Between June and October 2016, Lodestar negotiated and executed term sheets with Avidia Bank on behalf of each Project Company to secure debt financing for each Project.

25.     Immediately following the execution of the Lodestar and Strata Solar term sheet, Strata Solar executed a term sheet with the National Trust Community Investment Corporation ("NTCIC") such that NTCIC would syndicate the tax credits to a third-party investor.

26.     On or about September 7, 2016, Lodestar and each of the Project Companies executed pledge agreements with Strata Solar and pledged 100% of the interests of each Project Company to Strata Solar to secure payment on work Strata Solar was commencing for each Project (the "Pledge Agreements").  Strata Solar had quoted pricing to Lodestar of a weighted average amount of $2.08 per watt for Solar Strata's construction of all the Projects prior to Lodestar's execution of the Pledge Agreements.

27.     Strata Solar formed Strata Fund and Strata Manager (Strata Solar, Strata Fund, and Strata Manager are collectively referred to as "Strata") for the purpose of entering into agreements, obtaining tax equity financing, and carrying out construction of the Projects.

28.     On December 21, 2016, Lodestar and Strata executed an Equity Capital Contribution Agreement ("ECCA") for the Projects.

29.     Lodestar and Strata agreed to partner in a newly formed LLC to finance and construct the Projects, and consequently formed Strata LSE Master Holdco 1, LLC (the "Company") on October 6, 2016.

240547

30.     On December 21, 2016, Lodestar Energy and its wholly owned subsidiary LSE Holdings, entered into an Amended and Restated Operating Agreement with Strata Solar's wholly owned subsidiaries, Strata Fund and Strata Manager (the "Operating Agreement") for the operation of the Company.

31.     The Operating Agreement provided that the purpose of the Company was to "pursue the development, construction, financing, acquisition, ownership, leasing and operation of the Projects[.]"  Because Lodestar had already completed the development portion of each Project, the remaining work for the Company was to construct, commission and obtain tax equity financing for the Projects.

32.     Under the terms of their agreements, Strata would make a cash capital contribution to the Company of $236,734, and Lodestar would contribute $586,689 to the Company.  Strata would then own the Class A Membership Interests of the Company and would have the rights of a member, and the authority to appoint and replace the manager, while Lodestar would own the Class B Membership Interest of the Company and would have the rights of a member.

33.     The remainder of the funding for the Projects would come from the syndication of $9,888,537 in tax credits and borrowed funds comprised of tax equity financing, for which Strata was responsible, and up to $23,276,988 in debt financing that Lodestar had already arranged.

34.     The Operating Agreement required Lodestar to transfer the six Project Companies to the Company, and the Company would then have total control of the Project Companies during the construction and start-up phase.

35.     Strata Manager would serve as the Company's manager while the Projects were constructed and commissioned.

36.     As manager, the Operating Agreement gave Strata Manager general control over business operations, and it was the only party that had the ability to take action against, seek repayment from, or otherwise pursue claims against the entities with which the Company contracted.

37.     The Operating Agreement required Strata Manager to "take all actions reasonably necessary at the stage of development of each Project to further the development of such Project so as to achieve such Project's Commercial Operation Date as soon as is commercially reasonable and, to the extent consistent therewith, use commercially reasonable efforts to keep intact its business and preserve its relationships with customers, suppliers and other Persons with which it has significant business relationships with respect to such Project."

38.     The manager could only be replaced by the Class A Member.  Therefore, Strata, as the sole owner of Class A shares, was the only member who could replace the manager.

39.     Once the Projects were operating and generating electricity—and thereby generating revenue—Strata would receive payments equal to "(a) an after-tax net present value, measured as of the Effective Date, equal to the product of (i) $0.10 and (ii) the Aggregate Installed Watts DC; and (b) the after-tax net present value, measured as of the date that Strata makes any Additional Contribution to the Company, equal to all such Additional Contributions, using a 7.15% discount rate for purposes of the calculation under either (a) or (b) of this definition." (the "Target Return".)

240547

40.     Thus, in return for its construction expertise and tax equity financing support services, Strata is to be paid $0.10 per watt.  If the Projects all meet their projected capacities, this will entitle Strata to approximately $1,250,000.00. However, Strata also earns 7.15% interest on this total amount.  Therefore, the longer it takes Strata to complete construction and commence operations, the longer Strata accumulates interest, and the more it will ultimately receive from Lodestar.

41.     Under the Operating Agreement, Strata's receipt of the Target Return will trigger the Flip Date, at which point Strata would exit the Company and Lodestar would assume the responsibilities of manager.  Until that moment occurs, however, Lodestar has no means of changing the manager of the Company under the agreements.

42.     The Operating Agreement provides that, prior to the Flip Date, Lodestar has an 80 percent ownership interest in the Company, and Strata a 20 percent interest.  After the Flip Date, Lodestar will own a 95 percent interest in the Company, and Strata a 5 percent interest.

43.     In December 2016 and January 2017, after the Project Companies had been transferred to the Company, Strata, acting as manager of the Company, caused each of the six Project Companies to sign Solar System Engineering, Procurement and Construction Agreements ( "EPC" agreements) with Strata Solar.

44.     Because Strata Solar's wholly owned subsidiary was the Manager of the Company, and the ownership of the Project Companies had been transferred to the Company, Markus Wilhelm, who was employed by both Strata Solar and Strata Manager, signed each of the six EPC agreements on behalf of Strata Solar and also on behalf of each of the Project Companies.

240547

45.     In other words, Strata Solar now had complete control of the parties on either side of the EPC contracts that set forth the terms and conditions for Strata Solar's construction of the Projects.

46.     The six EPC agreements provided that the Company was to pay Strata Solar a range between $2.00 and $2.54 per watt of direct current electricity for each Project (the "Contract Price").  For example, if the Bradford Project resulted in a 6.00-megawatt facility as planned, the Contract price would be $2.22 multiplied by 6,000,000 watts, or $13,320,000.00.

47.     The Contract Price was a weighted average of $2.22 per watt, which was a $0.14 per watt increase (6.6%) over the prices Strata Solar quoted Lodestar just prior to Lodestar's execution of the Pledge Agreements.

48.     Pursuant to the EPC Agreements, the Contract Price could only be changed by written change orders.

49.     The six EPC agreements all required that Strata Solar would construct the Projects in accord with detailed specifications that specified the size, layout, and capacities of the Projects.  These specifications were the result of extensive and careful planning and needed to be performed as specified in order for the Projects to be able to connect with National Grid's grid.

50.     The six EPC agreements also set forth the deadline for completion of each of the six Projects as January 8, 2017.

51.     Once Strata Solar and its subsidiaries had complete control of the Project Companies, the Company, and the entities that would perform services under the EPCs, it

began taking actions that enriched it at the expense of Lodestar, breached the terms of the Operating Agreement, and breached the terms of the EPCs.

52.     First, Strata failed to properly manage Strata Solar's performance under the EPCs.  The construction of the Projects immediately began to run off schedule, with work being performed slower than the parties had agreed and slower than was necessary.

53.     For example, Strata Solar failed to appropriately staff the projects from the outset.  Rather than using teams of experienced contractors and electricians to perform the work, Strata Solar hired temporary and day laborers.

54.     The EPCs required that Strata Solar install proper grounding transformers, which are an essential piece of the solar system infrastructure and allow the power generation facility to tie into the utility company's power grid, which in turn allows the Company to sell that power to various end users.

55.     The utility company—National Grid—and Lodestar had already entered into interconnection service agreements that identified the specific components that would be necessary in order for the Project Companies to transmit power into the grid, including the size of these grounding transformers.  These specifications were provided to Strata Solar before it entered into the EPCs and the EPCs required that the projects be built according to these specifications.

56.     Though the size of the grounding transformers was clearly identified in the EPC specifications and in the interconnection service agreements with National Grid, all of which were provided to Strata Solar, Strata Solar ordered and installed the wrong sized grounding transformers for the Truckstop, Nolan, KMARD, Mitchell, and Bus Lot projects.

57.     Strata failed to detect that Strata Solar had installed the wrong sized transformers.  Strata Solar's failure to order and install the proper size grounding transformers was not discovered until National Grid, Lodestar, and Strata conducted final inspections (known as a witness test) of the Projects in May 2017, when National Grid identified the grounding transformers as being improperly sized and incompatible with its grid.

58.     This May 2017 date was already five months past the contractually mandated completion dates set forth in the EPCs.

59.     National Grid informed Strata Solar that the grounding transformers would need to be replaced with the properly sized transformers in order for the Projects to become operational and commence supplying power to the grid.

60.     As a result of the improperly sized grounding transformers, Strata Solar had to go back and order correctly sized transformers.  The manufacturer in turn had to construct new transformers in the correct sizes, which took an additional three months.   The transformers then had to be shipped to the Project locations, the improper transformers had to be removed, and the new, correct transformers had to be installed.  National Grid, Lodestar, and Strata then needed to re-inspect the facilities.

61.     As the direct and sole result of Solar Strata breaching the EPCs and installing the improperly sized grounding transformers, the completion of the Projects was delayed until the end of 2017.  These delays caused a loss of approximately 2,881,764 kwh of energy. Because the Company, through the Project Companies, already had agreements in place to sell that electricity to end users, this loss of kilowatt hours resulted in actual damages of more than $364,756.

62.     In addition, Massachusetts has a state Solar Renewable Energy Certificate ("SREC") market that allows generators of solar energy such as the Project Companies to sell SRECs to electricity suppliers for every megawatt of solar electricity it generates.  As a result of the delay due to the improper grounding transformers, the Company, through the Project Companies, lost SRECs worth more than $550,000.

63.     Because the Company, in reliance on Strata Solar's representations that the Projects would be completed by January 8, 2017, had promised the SRECs to third parties, it incurred at least an additional $275,000 in SREC penalties.

64.     The delays also caused the Company to pay additional civil construction costs and lease payments of more than $83,000.  These costs were incurred because the leases for the land for the Projects had been structured to include lower payments during the construction phase, and higher payments after the Projects were generating electricity—and therefore revenue—after January 2017.  In addition, Strata Solar's work had damaged some of the properties, triggering civil construction costs to repair that damage.

65.     Because Plaintiff had already drawn on the debt facility in order to finance the construction of these Projects, it was already making interest payments on that debt and had to cover these carrying costs while the Projects were not generating revenue.

66.     As a result of these losses, Lodestar informed Strata and the Company that they should notify Strata Solar and Strata Solar's insurance providers of a claim.  Strata and the Company refused.

67.     As a result of these losses, Lodestar informed Strata and the Company that the Company should commence an action against Strata Solar to recover the damages suffered by

Strata Solar's delays and failures to install the proper grounding transformers.  Strata and the Company refused.

68.    The EPC also required Strata Solar to perform capacity testing at the largest project (a "Capacity Test"), Bradford, prior to substantial completion of the Project to ensure that it was generating sufficient energy in accord with the agreement between Strata Solar and the Project Company (the "Minimum Guaranteed Capacity").

69.    If Strata Solar found that Bradford was not generating the Minimum Guaranteed Capacity, Strata Solar was required to assess the plan, perform any necessary repairs or modifications, and re-run the Capacity Test.

70.    If Strata Solar failed to successfully complete the Capacity Test within 90 days of the initial Capacity Test, it was required to pay Performance Liquidated Damages in the amount of 1% of the Contract Price for each percentage point below the Minimum Guaranteed Capacity.

71.    Strata Solar should have conducted this Capacity Test in April 2017.  Strata Solar failed to provide the results of that testing to Lodestar.

72.    Instead of performing the Capacity Testing and making any adjustments to ensure the Minimum Guaranteed Capacity was being generated, Strata Solar commissioned Bradford to become operational in April 2017 with no Capacity Testing.  During that period, neither Strata Solar nor the Company provided any Capacity Test data to Lodestar, nor did Strata Solar pay any Performance Liquidated Damages.

73.    Strata Solar had thus placed Bradford in service without first ensuring that it generated the Minimum Guaranteed Capacity.  As a result, Bradford underperformed for a period of six months.  Throughout these six months, Lodestar repeatedly demanded that the

Company and Strata Solar provide it access to the testing data, provide it data on the power generation, and provide an explanation for Strata Solar's apparent failure to perform Capacity Testing as required by the EPC. The Company and Strata Solar refused and failed to provide access or visibility as to what was causing these performance issues despite multiple requests.

74.     As a result, Bradford experienced a power generation shortfall of at least 2,094,130 kwh for a period of five months from April to August 2017.

75.     This shortfall resulted in direct losses to the Company of more than $235,000 in lost revenue because the electricity could not be sold to end users, and more than $470,000 in lost SREC revenue. In addition, the Company had to pay more than $80,000 in order to meet its firm SREC commitments.

76.     The delays in properly commissioning the Bradford Project also caused the Company to make additional lease payments of at least $57,000.

77.     In addition, Strata Solar should have paid Performance Liquidated Damages for this Capacity Test shortfall in accordance with the EPC.

78.     Lodestar demanded that Strata and the Company enforce the terms of the EPC and require Strata Solar to pay the Performance Liquidated Damages. Strata and the Company refused.

79.     Strata Solar breached the EPCs by failing to complete construction of any of the Projects by January 8, 2017.

80.     In or around July 2018, Strata Solar and the Company approached Lodestar with proposed change orders and requests for reimbursement totaling approximately $1 million. Lodestar reviewed these requested change orders and found that the increased costs were the result of Strata Solar's poor management, poor workmanship, and the use of

improper materials.   Lodestar refused to approve these change orders and requests for reimbursement.

81.   In September 2018, however, Lodestar received the first audited financial statements from the Company.   These statements showed an unexplained charge of $1.2 million for "costs of goods."   Because Strata Solar had agreed to perform construction of the Projects based on a formula tied to the size of the Projects, any "costs of goods" should have been borne by Strata Solar.

82.   Based upon information and belief, Strata Manager and Strata Solar had conspired to re-designate and hide the approximately $1 million in proposed change orders and requests for reimbursement (including interest to bring the amount to $1.2 million) as an increase to the "costs of goods."

83.   Lodestar demanded documentary support for these "costs of goods" and demanded an explanation from the Company, Strata Manager, and Strata Solar.   They have repeatedly refused to provide this documentary support or explanation.

84.   Because Strata controlled the Company, the Company has, upon information and belief, already paid Strata Solar the $1.2 million in increased "costs of goods."

85.   During construction of the Projects, Strata was required to make lease payments to the owners of each site.   Upon information and belief, Strata has failed to make timely payments, thereby incurring penalties that will ultimately be borne by the Company.

86.   As a result of the above acts and omissions, Plaintiffs suffered additional damages.

87.   Plaintiffs bring this action derivatively in the right of and for the benefit of the Company to redress injuries suffered and to be suffered by it as a result of the Defendants'

240547

breaches of contract, breaches of fiduciary duty, breaches of the implied covenant of good faith and fair dealing, and unfair and deceptive business practices.

88.    Lodestar was a member of the Company at the time of the wrongdoing complained of, has continuously been a member of the Company, and is a current member of the Company, owning 80 percent of the Company pursuant to the Operating Agreement and having contributed more than 70 percent of the unreturned contributions of the Company.

89.    Lodestar has repeatedly demanded that the Company take action to redress the injuries set forth herein including, without limitation, demanding that the Company require Strata Solar to notify its insurers of potential claims and take action against Strata Solar to recover damages suffered due to Strata Solar's conduct.  Because the Company is under the control of Strata Manager, which is under the control of Strata Fund and Strata Solar, the Company has refused to take any actions to redress the injuries set forth herein.

90.    Moreover, because Strata Manager will remain the manager of the Company until the Flip Date, the Company will continue to refuse to pursue redress for its injuries against Strata Fund, Strata Manager, or Strata Solar.

## LODESTAR'S CAUSES OF ACTION

### COUNT 1: BREACH OF CONTRACT AS TO ALL DEFENDANTS

91.    Plaintiffs hereby repeat and reallege each allegation set forth herein.

92.    Lodestar Energy, LSE Holdings, Strata Fund, Strata Manager, and Strata Solar entered into contracts whereby Strata Fund and Strata Manager agreed to supervise the Company and manage the construction of the Projects, and Strata Solar agreed to provide construction and financing services.

93.     Strata Fund and Strata Manager have failed to provide the agreed-upon services to Lodestar Energy and LSE Holdings by, including, but not limited to, failing to take all actions reasonably necessary at the stage of development of each Project to further the development of such Project so as to achieve such Project's Commercial Operation Date as soon as is commercially reasonable and, to the extent consistent therewith, use commercially reasonable efforts to keep intact its business and preserve its relationships with customers, suppliers and other Persons with which it has significant business relationships with respect to such Project, using their position of control over the Company to cause inflated payments to be made to Strata Solar, failing to properly manage Strata Solar's performance, failing to require Strata Solar to notify its insurers of potential claims against it, failing to require Strata Solar to perform Capacity Testing, failing to require Strata Solar to pay Performance Liquidated Damages, failing to require Strata Solar to complete the Projects in a timely manner, and failing to require Strata Solar to make timely lease payments.

94.     Strata Solar has failed to provide the agreed-upon services to Lodestar Energy and LSE Holdings with conduct including, but not limited to, using its position of control over Strata Fund and Strata Manager to cause inflated payments to be made to Strata Solar, failing to notify its insurers of potential claims against it, failing to perform Capacity Testing, failing to pay Performance Liquidated Damages, failing to complete the Projects in a timely manner, and failing to make timely lease payments.

95.     Strata Fund, Strata Manager, and Strata Solar have therefore breached the terms of their contracts.

96.     This breach proximately caused damages to Lodestar Energy, LSE Holdings, and the Company in an amount to be determined at trial but not less than $3,500,000.

240547

### COUNT 2: BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING AS TO ALL DEFENDANTS

97.     Plaintiffs hereby repeat and reallege each allegation set forth herein.

98.     Lodestar Energy, LSE Holdings, Strata Fund, Strata Manager, and Strata Solar entered into contracts whereby Strata Fund and Strata Manager agreed to supervise the Company and manage the construction of the Projects, and Strata Solar agreed to provide construction and financing services.

99.     These contracts contain an implied covenant of good faith and fair dealing.

100.    Strata Fund, Strata Manager, and Strata Solar have violated the implied covenant of good faith and fair dealing with conduct including, but not limited to, using their position of control over the Company to make inflated payments to Strata Solar, failing to require Strata Solar to notify its insurers of potential claims against it, failing to require Strata Solar to construct the Projects in accord with the specifications, failing to require Strata Solar to perform Capacity Testing, failing to require Strata Solar to pay Performance Liquidated Damages, failing to require Strata Solar to complete the Projects in a timely manner, and failing to require Strata Solar to make timely lease payments.

101.    Strata Solar has violated the implied covenant of good faith and fair dealing with conduct including, but not limited to, using its position of control over the Strata Fund and Strata Manager to cause the Company to make inflated payments to Strata Solar, failing to properly manage Strata Solar's performance, failing to notify its insurers of potential claims against it, failing to construct the Projects in accord with the specifications, failing to perform Capacity Testing, failing to pay Performance Liquidated Damages, failing to complete the Projects in a timely manner, and failing to make timely lease payments

102.    As a result of this conduct, Plaintiffs have been denied the bargained for benefits of the Agreement.

103.    This breach proximately caused damages to Plaintiffs in an amount to be determined at trial but not less than $3,500,000.

### COUNT 3: BREACH OF FIDUCIARY DUTY AS TO ALL DEFENDANTS

104.    Plaintiffs hereby repeat and reallege each allegation set forth herein.

105.    The relationships between and among the Defendants and Plaintiffs give rise to a fiduciary obligation on the part of Strata Fund, Strata Manager, and Strata Solar to Plaintiffs.

106.    Strata Fund, Strata Manager, and Strata Solar undertook such trust and assumed the highest duties of good faith, loyalty, and due care to the Plaintiffs.

107.    Strata Fund, Strata Manager, and Strata Solar have knowingly or recklessly and in bad faith violated their fiduciary duties of good faith, care, and loyalty to Plaintiffs, and have placed their own interests ahead of the interests of Plaintiffs with conduct including, but not limited to, using their position of control over the Company to cause inflated payments to be made to Strata Solar, failing to properly manager Strata Solar's performance, failing to require Strata Solar to notify its insurers of potential claims against it, failing to require Strata Solar to perform Capacity Testing, failing to require Strata Solar to pay Performance Liquidated Damages, failing to require Strata Solar to complete the Projects in a timely manner, failing to require Strata Solar to perform construction services as agreed, and failing to require Strata Solar to make timely lease payments.

108.    Defendants' breaches of fiduciary duties proximately caused damages to Plaintiffs in an amount to be determined at trial but not less than $3,500,000.

240547

## COUNT 4: AIDING AND ABETTING BREACHES OF FIDUCIARY DUTY AS TO STRATA SOLAR

109.    Plaintiffs hereby repeat and reallege each allegation set forth herein.

110.    Strata Solar knowingly and substantially aided and abetted breaches of fiduciary duty by Strata Fund and Strata Manager.

111.    Strata Solar aided and abetted breaches of fiduciary duty by conduct including, but not limited to, submitting improper requests for payment, failing to pay Performance Liquidated Damages, failing to conduct Capacity Testing, failing to perform construction services as agreed, and failing to make timely lease payments.

112.    Strata Fund and Strata Manager used their position as Manager of the Company to knowingly cause the Company to make improper payments to Strata Solar and to allow Strata Solar to submit improper requests for payment, to fail to pay Performance Liquidated Damages, to fail to conduct Capacity Testing, to fail to perform construction services as agreed, and to fail to make timely lease payments.

113.    Strata Fund and Strata Manager owed Plaintiffs a fiduciary duty to act in their best interests and to do so with a duty of loyalty, prudence, and care in pursuit of the Company's business objectives.

114.    Based on the foregoing, Strata Solar substantially assisted and aided and abetted Strata Fund and Strata Manager's breaches of fiduciary duty to Plaintiffs.

115.    As a proximate result of aiding and abetting the breaches of fiduciary duty alleged herein, Strata Solar is responsible for damage to Plaintiffs sustained in an amount to be determined at trial but not less than $3,500,000.

## COUNT 5: FRAUD AND FRAUDULENT CONCEALMENT

116.    Plaintiffs hereby repeat and reallege each allegation set forth herein.

22

240547

117.    Strata Fund and Strata Manager were in possession of material facts concerning change orders submitted by Strata Solar for payment of approximately $1,200,000.

118.    Strata Fund and Strata Manager, as wholly owned subsidiaries of Strata Solar with common management, knew that Strata Solar was seeking payment from the Company to which it was not entitled, and knew that Lodestar had rejected the change orders and requests for reimbursement and prohibited the Company from making the increased payments.

119.    Strata Fund and Strata Manager thereafter caused the Company to pay these change orders as increased "costs of goods."

120.    Strata Fund and Strata Manger then caused the Company's audited financial statements issued in September 2018 to improperly reclassify these paid change orders as a payment for increased "costs of goods."

121.    This fraud and fraudulent concealment proximately caused damages to Plaintiffs in an amount to be determined at trial but not less than $1,200,000.

## COUNT 6: FRAUD IN THE INDUCEMENT OF A CONTRACT

122.    Plaintiffs hereby repeat and reallege each allegation set forth herein.

123.    Strata Solar, Strata Fund, and Strata Manager were aware of material facts that would prevent them from performing the terms of the Operating Agreement and prevent them from being able to construct the Projects as specified and on schedule according to the EPCs. They knew that they would use their common management and ownership in order to cause the Company to make improper payments to Strata Solar, that Strata Manger and Strata Fund could not properly supervise Strata Solar and would not require Strata Solar to properly

perform the EPC contracts and would prevent Lodestar from receiving the bargained for benefits of the Operating Agreement.

124.     Strata Fund, Strata Manager, and Strata Solar knew that Lodestar would rely on these misrepresentations or omissions in order to enter into the Operating Agreement.

125.     On or about May 25, 2016, Strata Solar misrepresented to Lodestar that it had significant experience constructing state-of-the-art solar energy systems.  Strata Solar misrepresented that it was capable of working with the plans and specifications that each Project Company had developed, such that power from each Project could be distributed to the grid operated by National Grid and in turn sold to various end users.  Strata Solar misrepresented that it had expertise in complying with the regulatory and financial restrictions of such projects, and that it would be able to perform the work in the time specified.

126.     Strata Solar knew in May 2016 that Lodestar would rely on these misrepresentations or omissions in order to enter into agreements with Strata Solar and its subsidiaries for the development and construction of the Projects.

127.     Strata Solar knew in May 2016 that Lodestar would rely on Strata Solar's misrepresentations or omissions regarding its ability and expertise to complete the Projects within the time allotted and that, based on this reliance, Lodestar would enter into agreements to provide electricity to the various end users based upon this schedule.

128.     This fraud in the inducement caused damages to Lodestar in an amount to be determined at trial but not less than $3,500,000.

### COUNT 7: UNFAIR AND DECEPTIVE PRACTICES AS TO ALL DEFENDANTS

129.     Plaintiffs hereby repeat and reallege each allegation set forth herein.

240547

130.     Defendants are engaged in trade and commerce including by performing construction and management services in the renewable energy market.

131.     Defendants' breach of fiduciary duties, breach of the covenant of good faith and fair dealing, aiding and abetting breaches of fiduciary duty, fraud, fraudulent concealment, and fraudulent inducement as set forth above, constitute unfair and deceptive acts or practices in trade or commerce that violated Mass. Gen. L. c. 93A § 11.

132.     Defendants' unfair and deceptive acts or practices, perpetrated in Massachusetts, proximately caused Plaintiff to suffer monetary damages.

## DERIVATIVE CAUSES OF ACTION

### COUNT 8: BREACH OF CONTRACT AS TO STRATA SOLAR

133.     Plaintiffs hereby repeat and reallege each allegation set forth herein.

134.     The Company, through its Project Companies, and Strata Solar entered into contracts whereby Strata Solar agreed to construct the Projects.

135.     Strata Solar breached those contracts by, without limitation, causing inflated payments to be made by the Company to Strata Solar, failing to properly perform the contracts, failing to notify its insurers of potential claims against it, failing to perform Capacity Testing, failing to ensure the Projects operated appropriately, failing to pay Performance Liquidated Damages, failing to complete the Projects in a timely manner, and failing to make timely lease payments.

136.     Strata Solar has therefore breached the terms of the contracts.

137.     This breach proximately caused damages to the Company in an amount to be determined at trial but not less than $3,500,000.

240547

## COUNT 9: BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING AS TO STRATA SOLAR

138.    Plaintiffs hereby repeat and reallege each allegation set forth herein.

139.    The Company, through it Project Companies, and Strata Solar entered into contracts whereby Strata Solar agreed to construct the Projects.

140.    These contracts contain an implied covenant of good faith and fair dealing.

141.    Strata Solar has violated the implied covenant of good faith and fair dealing with conduct including, but not limited to, using its position of control over the Strata Fund and Strata Manager to cause the Company to make inflated payments to Strata Solar, failing to properly manage Strata Solar's performance, failing to notify its insurers of potential claims against it, failing to construct the Projects in accord with the specifications, failing to perform Capacity Testing, failing to pay Performance Liquidated Damages, failing to complete the Projects in a timely manner, and failing to make timely lease payments

142.    As a result of this conduct, the Company has been denied the bargained for benefits of the Agreements.

143.     This breach proximately caused damages to Plaintiffs in an amount to be determined at trial but not less than $3,500,000.

## COUNT 10: BREACH OF FIDUCIARY DUTY AS TO STRATA SOLAR

144.    Plaintiffs hereby repeat and reallege each allegation set forth herein.

145.    The relationship between the Company and Strata Solar give rise to a fiduciary obligation on the part of Strata Solar to the Company.

146.    Strata Solar undertook such trust and assumed the highest duties of good faith, loyalty, and due care to the Company.

240547

147.    Strata Solar has knowingly or recklessly and in bad faith violated its fiduciary duties of good faith, care, and loyalty to the Company, and has placed its own interests ahead of the interests of the Company with conduct including, but not limited to, causing inflated payments to be made to Strata Solar, failing to properly perform in accord with the EPCs, failing to notify its insurers of potential claims against it, failing to perform Capacity Testing, failing to pay Performance Liquidated Damages, failing to complete the Projects in a timely manner, failing to perform construction services as agreed, and failing to make timely lease payments.

148.    Defendants' breach of fiduciary duties proximately caused damages to Plaintiffs in an amount to be determined at trial but not less than $3,500,000.

### COUNT 11: UNFAIR AND DECEPTIVE TRADE PRACTICES AS TO STRATA SOLAR

149.    Plaintiffs hereby repeat and reallege each allegation set forth herein.

150.    Defendant is engaged in trade and commerce including by performing construction and management services in the renewable energy market.

151.    Defendant's breach of fiduciary duties, breach of the covenant of good faith and fair dealing, aiding and abetting breaches of fiduciary duty, fraud, fraudulent concealment, and fraudulent inducement as set forth above, constitute unfair and deceptive acts or practices in trade or commerce that violated Mass. Gen. L. c. 93A § 11.

152.    Defendant's unfair and deceptive acts or practices, perpetrated in Massachusetts, proximately caused Plaintiff to suffer monetary damages.

**WHEREFORE**, Plaintiff prays this Court enter judgment as follows:

1. Judgment in favor of Plaintiffs Lodestar Energy LLC and LSE Holdings Fund 1 2017 LLC as to Counts 1 through 7 in an amount or amounts to be determined, including punitive damages, interest, and reasonable costs and attorneys' fees incurred in connection with this matter;

240547

2.  Judgement in favor of Strata LSE Master Holdco 1, LLC as to counts 8 through 11 in an amount or amounts to be determined, including punitive damages, interest, and reasonable costs and attorneys' fees incurred in connection with this matter;

3.  Award Plaintiffs double or treble damages in an amount to be determined, including interest, reasonable costs, and attorneys' fees;

4.  Direct Defendants to account to Plaintiffs for all damages sustained or to be sustained to their interests by reason of the wrongdoings alleged herein;

5.  Grant such further relief as the Court finds equitable and just.


**PLAINTIFFS DEMAND A TRIAL BY JURY ON ALL ISSUES SO TRIABLE**.



Dated: March 23, 2021                    Plaintiffs,
                                         BY THEIR ATTORNEYS,



                                         _____
                                         David E. Valicenti (632980)
                                         Christopher M. Hennessey (654680)
                                         John F. Dew (688467)
                                         COHEN KINNE VALICENTI & COOK LLP
                                         28 North Street, 3rd Floor
                                         Pittsfield, Massachusetts 01201
                                         Telephone: (413) 443-9399
                                         Facsimile: (413) 442-9399
                                         Email: dvalicenti@cohenkinne.com
                                                chennessey@cohenkinne.com
                                                jdew@cohenkinne.com

                                                .

240547

## **VERIFICATION**

STATE OF CONNECTICUT)

ss.:                                    )

COUNTY OF HARTFORD  )

Jeffrey Macel, being duly sworn, deposes and says that I am the Manager of Lodestar Energy LLC, which is the manager and sole shareholder of LSE Holdings Fund 1 2017 LLC, in the case captioned Lodestar Energy LLC, LSE Holdings Fund 1 2017 LLC, for itself and derivatively on behalf of Strata LSE Master Holdeo 1, LLC v. Strata Solar LLC, Strata Fund Mass 1 LLC, and Strata Manager LLC, and have authorized the filing of this complaint. I have reviewed the allegations made in the complaint, and to those allegations of which I have personal knowledge, I believe them to be true. As to those allegations of which I do not have personal knowledge, I rely on corporate filings, financial statements, and written agreements, and I believe them to be true.

I further declare that LSE Holdings Fund 1 2017 LLC is a current owner of 80 percent of the interest in Strata LSE Master Holdco 1, LLC and has been an owner of such interest from October 6, 2016 to present.

Jeffrey Macel

Manager, Lodestar Energy LLC, manager of
LSE Holdings Fund 1 2017 LLC

Sworn to me this 23rd day of March, 2021.

Notary Public

JOANNA T. PISCITELLO
*NOTARY PUBLIC*
MY COMMISSION EXPIRES NOV. 30, 2023